## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LAWRENCE SHEPPARD,
   *Plaintiff*,

   v.

ROBERTS, *et al.*,
   *Defendants*.

No. 3:20-cv-875 (VAB)

### INITIAL REVIEW ORDER AND ORDER ON MOTION TO APPOINT COUNSEL

Lawrence Sheppard ("Plaintiff"), then incarcerated at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, filed a Complaint *pro se* under 42 U.S.C. § 1983 against Intelligence Officer Roberts, Lieutenant and Intelligence Officer Randolph, Lieutenant and Disciplinary Hearing Officer Eberle, Captain and Security Risk Group (SRG) Coordinator Papoosha, District Administrator Martin, Director of Security Santiago, and Commissioner Cook (collectively, "Defendants"). Am. Compl., ECF No. 11 (Aug. 13, 2020).

Mr. Sheppard has sued Defendants Roberts, Randolph, Eberle, and Martin in their individual capacities, and Defendants Papoosha, Santiago, and Cook in both their individual and official capacities, alleging that Defendants variously violated his First and Fourteenth Amendment rights by improperly classifying him as a Security Risk Group member while a pretrial detainee, based on his social media posts. He also sets forth an Eighth Amendment claim challenging the conditions of his confinement and asserts related state law claims. Mr. Sheppard seeks injunctive relief and damages. *Id.*

The Court **DISMISSES** the First and Eighth Amendment claims, the Fourteenth Amendment equal protection claim, and the request for injunctive relief, and declines to exercise supplemental jurisdiction over Mr. Sheppard's state constitutional claims. The Court also

**DISMISSES** any claims for damages against Defendants Papoosha, Santiago, and Cook in their official capacities. The Court **DENIES** without prejudice to renewal the motion to appoint counsel.

The Court will permit Mr. Sheppard's case against Defendants to proceed on the Fourteenth Amendment procedural and substantive due process claims and on the associated state law claims for negligence and intentional infliction of emotional distress against Defendants in their individual capacities.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

On July 26, 2018, Mr. Sheppard allegedly "was admitted to the Hartford [Correctional Center] as a [pretrial] detainee and housed in general population." *Id.* ¶ 12.[1] The following day, he allegedly was brought to restrictive housing though he had allegedly not received a disciplinary charge. *Id* ¶ 13. Instead, he allegedly was told that his placement was the result of a social media post unrelated to prison concerns. *Id.* Mr. Sheppard also allegedly was told that he could not have an advocate or call witnesses at the hearing. *Id.* ¶ 14. Officer Randolph allegedly told Mr. Sheppard that there was no possibility that he would be found not guilty at the hearing. *Id.* Mr. Sheppard, allegedly under duress, then signed a paper Officer Roberts gave him. *Id.*

On July 31, 2018, Mr. Sheppard allegedly attended a hearing before Hearing Officer Eberle. *Id.* ¶ 15. He allegedly was not permitted to speak, present evidence or rebut the evidence presented. *Id.* The hearing allegedly was not recorded. *Id.* At the hearing, Mr. Sheppard alleged was found guilty of Security Risk Group affiliation based on his social media post. *Id.*

---

[1] On July 16, 2020, the Court noted that a page was missing from the Complaint and directed Mr. Sheppard to file a complete copy. Order, ECF No. 8 (July 16, 2020). Mr. Sheppard filed an Amended Complaint on August 13, 2020. Am. Compl.

Mr. Sheppard allegedly had previously been designated a Security Risk Group member during a prior term of incarceration. *Id.* ¶ 16. He alleges that he successfully renounced his affiliation in 2013. *Id.* Allegedly as a result of the 2018 guilty finding of SRG affiliation, however, Mr. Sheppard was reaffiliated and classified as a "two-timer," which subjected him to a minimum two-year period of restrictive confinement. *Id.* Mr. Sheppard allegedly then was transferred to the SRG unit at Walker Correctional Institution. *Id.*

Mr. Sheppard alleges that he is not a Security Risk Group member. *Id.* ¶ 19. He alleges that he has sent numerous "letters, appeals, and grievances" to Defendants Papoosha, Martin, and Santiago. *Id.* ¶ 17. All were allegedly ignored or denied. *Id.*

In restrictive housing, Mr. Sheppard allegedly was subjected to the following conditions that those in general population were not: twenty-three hours per day in lockdown instead of six hours of recreation per day; three phone calls per week instead of six per day; being forced to house and recreated with inmates from rival gangs; a $35.00 weekly commissary spending limit with restricted items instead of a $75.00 weekly limit with no restrictions; no out-of-cell exercise beyond one hour per week of gym recreation; visits from immediate family only instead of from all persons on the inmate's visiting list; inability to earn risk-reduction earned credit; no early release opportunities; no law library or legal materials; no religious services or programming; no hot pot; three showers per week in an unsanitary facility instead of unlimited showers in facilities cleaned daily; limited access to medical and mental health services; and constant lock-downs, strip searches, and safety searches. *Id.* ¶ 22.

## B. Procedural History

On June 24, 2020, Mr. Sheppard filed his Complaint and a motion to proceed *in forma pauperis*. Compl., ECF No. 1 (June 24, 2020); Mot. to Proceed In Forma Pauperis, ECF No. 2

(June 24, 2020). On July 2, 2020, the Court granted the motion.[2] Order, ECF No. 7 (July 2, 2020).

On July 16, the Court noted that the Complaint appeared to be missing a page and directed Mr. Sheppard to file a complete Complaint by August 7, 2020. Order, ECF No. 8 (July 16, 2020).

On the same day, Mr. Sheppard moved to appoint counsel. Mot. to Appoint Counsel, ECF No. 9 (July 16, 2020).

On August 13, 2020, Mr. Sheppard filed an Amended Complaint. Am. Compl.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.*; *see also Liner v. Goord*, 196 F.3d 132, 134, n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, sua sponte dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia*, the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Under the Federal Rules of Civil Procedure, a plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests,"

---

[2] Mr. Sheppard was incarcerated when he filed his initial, incomplete Complaint. Before the Court received his Amended Complaint, however, he was released from custody. *See* Notice of Change of Address, ECF No. 10 (July 27, 2020).

*see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by pro se plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); see also *Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants). This requirement applies both when the plaintiff pays the filing fee and when he proceeds *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam). However, notwithstanding this liberal interpretation, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## III.   DISCUSSION

Mr. Sheppard asserts violations of his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution, as well as related state constitutional claims and claims of negligence and intentional infliction of emotional distress. Am. Compl. at ¶¶ 28-34.

Specifically, Mr. Sheppard alleges that Defendants Roberts and Randolph confined him to restrictive housing for a social media post and denied him the ability to obtain evidence, have the assistance of an advocate, or call witnesses in order to present a proper defense, *id* ¶ 28; Defendant Eberle denied him the ability to present a proper defense, witnesses and evidence at the hearing and was not an impartial hearing officer, *id* ¶ 29; Defendants Papoosha, Martin and Santiago denied him adequate redress of grievances and were negligent in failing to remedy the violation of directive policy, *id* ¶ 30; Defendants Papoosha, Santiago and Cook were responsible for the coordination of the Security Risk Group program and units and associated policies, *id* ¶ 31, as well as for forcing him to house with an inmate designated as a rival affiliation, *id* ¶ 32; Defendants' continuing course of conduct subjected him to restrictions, confinement and threat to his physical health and emotional well-being, *id.* ¶ 33; and Defendants' actions and failures to act constitute negligence and infliction of emotional distress under Connecticut state law, *id.* ¶ 34.

Mr. Sheppard requests injunctive relief in the form of releasing him from the Security Risk Group unit and program with the restoration of all rights and privileges and expunging the Security Risk Group affiliation designations described in his Complaint from his record, *id.* at 10, as well as compensatory and punitive damages, *id.* at 10-11.

The Court will address the various claims in turn.

### A. Eleventh Amendment

A claim against an individual in his official capacity "'generally represents[s] only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. N.Y.C. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). "[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.* at 166. Absent consent from a state, the Eleventh Amendment bars damages claims against it or entities constituted under its authority. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979) ("There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the state] has consented to the filing of such a suit.").

Mr. Sheppard alleges that the Defendants are Connecticut Department of Correction employees. Am. Compl. ¶¶ 4-11. To the extent that Mr. Sheppard seeks monetary damages from Defendants in their official capacities, the Eleventh Amendment bars those claims. *See Graham*, 473 U.S. at 165–66; *Quern*, 440 U.S. at 340-42. Moreover, Section 1915 requires the Court to dismiss all claims seeking monetary damages against defendants in their official capacities. 28 U.S.C. §1915A(b)(2) ("[o]n review, the court shall . . . dismiss the complaint, or any portion of the complaint, if the complaint . . . seeks monetary relief from the defendant who is immune from such relief.").

Accordingly, the Court will dismiss Mr. Sheppard's claims against Defendants for monetary damages in their official capacities.

### B. Federal Constitutional Claims

"Section 1983 permits an individual deprived of a federal right by a person acting under color of state law to seek compensation in federal court." *Wimmer v. Suffolk Cty. Police Dep't*,

176 F. 3d 125, 136 (2d Cir. 1999); *see also Richardson v. McKnight*, 521 U.S. 399, 403 (1997). "To prevail in a § 1983 claim, a plaintiff must prove that the challenged conduct was attributable at least in part to a person acting under color of state law and that the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Wimmer*, 176 F. 3d at 136–37.

As a threshold inquiry for Section 1983 claims, the Court should precisely identify the constitutional violation alleged. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979) ("[B]efore the relationship between the defendant's state of mind and his liability under § 1983 can be meaningfully explored, it is necessary to isolate the precise constitutional violation with which he is charged.").

### a. The First Amendment Claim

Mr. Sheppard argues that the Defendants retaliated against him for exercising his First Amendment right to free speech when they classified him as a Security Risk Group member, based on a social media post. Am. Compl ¶¶ 28-30.

To state a cognizable First Amendment retaliation claim, Mr. Sheppard must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted)).

The Supreme Court has recognized a First Amendment interest in posting on social media. *See Packingham v. North Carolina*, ___ U.S. ___, 137 S. Ct. 1730, 1737 (2017) ("[B]y prohibiting [offenders] from using [social media] websites, North Carolina with one broad stroke bars access to what for many are the principal sources for . . . speaking and listening in the modern public

square . . . They allow a person with an internet connection to 'become a town crier with a voice that resonates farther than it could from any soapbox.' In sum, to foreclose access to social medial altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights.") (citing *Reno v. ACLU*, 521 U.S. 844, 870 (1997)).

Mr. Sheppard therefore has plausibly alleged that the First Amendment protects his speech interest in his social media posts. *See id.* (recognizing that "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights.").

Mr. Sheppard also must allege facts showing that the defendants took adverse action against him. "[O]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Wrobel v. Cty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012). Whether a particular action is considered adverse depends on the circumstances. *See Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewic v. Sorema N.A.*, 534 U.S. 506 (2002) (the definition of adverse action "is not static across contexts," but "must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees … before an action taken against them is considered adverse." (internal quotation marks and citation omitted)).

Mr. Sheppard describes many conditions of his restrictive confinement that are significantly harsher than the conditions in general population, conditions to which he is subjected for a minimum of two years. Taking Mr. Sheppard's allegations as true, the Defendants' conduct would deter an individual of ordinary firmness from engaging in speech on their social media for fear that prison officials may use those statements against them in future detention decisions as a

pretrial detainee. *See Wrobel*, 692 F.3d at 31; *see also Hayes v. Santiago*, C.A. No. 3:18-cv-01758 (JAM), 2018 WL 5456494, at *3 (D. Conn. Oct. 29, 2018) (finding a plausible retaliation claim against prison officials after the officials placed a pretrial detainee in segregation based on his social media posts); *Scozzari v. Santiago*, C.A. No. 3:19-cv-00229 (JAM), 2019 WL 1921858, at *3–*4 (D. Conn. Apr. 29, 2019) (finding a plausible retaliation claim against prison officials after the officials placed a pretrial detainee in segregation based on his Facebook posts). The Court therefore concludes that Mr. Sheppard has plausibly alleged that he was subjected to adverse action.

Mr. Sheppard also must allege that the adverse actions he was subjected to were caused by his social media post.

In order to allege causation, Mr. Sheppard must state facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (second alteration in original) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)). "Some of the facts often used to determine retaliatory motive may include (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record; (3) a finding of not guilty at the disciplinary hearing; and (4) statements by the officials showing motivation." *Ramos v. Semple*, C.A. No. 3:18-cv-1459 (VAB), 2019 WL 2422875, at *2 (D. Conn. June 10, 2019).

Courts treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally protected retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (internal quotation

marks and citation omitted).

Although the Court has previously found a plausible retaliation claim where placement in segregation was based on social media posts, *see Kelly v. Santiago*, No. 3:18-cv-1796 (VAB), 2019 WL 3574631, at *4-6 (D. Conn. Aug. 6, 2019), the Court revisited this conclusion after more recent decisions by other judges in this District "conclude[d] that allegations that prison officials relied on social media posts to determine an inmate's status as a Security Risk Group member does not satisfy the causal requirement for stating a valid First Amendment retaliation claim," *Benway v. Aldi*, No. 3:19-cv-208 (VAB), 2020 WL 4433561, at *6 (D. Conn. July 31, 2020) (citing *Martinez v. Payne*, 3:20-cv-00231 (JAM), 2020 WL 3630422, at *4 (D. Conn. July 4, 2020); *Wilson v. Santiago*, No. 3:19-cv-1807 (JAM), 2020 WL 1989135, at *2 (D. Conn. Apr. 27, 2020); *Caves v. Payne*, No. 3:20-cv-15 (KAD), 2020 WL 1676916, at *4–*5 (D. Conn. Apr. 6, 2020)).

These courts have determined that "[t]he First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime to prove motive or intent." *Caves*, 2020 WL 1676916, at *4 (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993)); *Martinez*, 2020 WL 3630422, at *4 (same); *Wilson*, 2020 WL 1989135, at *3 (same).

Here, Mr. Sheppard "has not alleged facts suggesting that his social media posting was a substantial or motivating factor in any retaliatory conduct by the Defendants." *Benway*, 2020 WL 4433561, at *6. His allegations do not plausibly raise an inference that the Defendants acted with a retaliatory motivation "to punish him for posting on social media or to deter him from doing so in the future." *Caves*, 2020 WL 1676916, at *4; *see also Wilson*, 2020 WL 1989135, at *3 ("In the absence of an allegation that [the defendant] sought to punish or retaliate against [the plaintiff] simply for engaging in First Amendment-protected expression (or for the content of that expression apart from what it suggested about [the plaintiff's] gang affiliation) the complaint does not

plausibly allege a First Amendment retaliation claim."); *Martinez*, 2020 WL 3630422, at *4 (dismissing First Amendment claim because allegations showed defendants used the plaintiff's social media posts as evidence of his gang affiliation rather than intent to punish or retaliate against the plaintiff for engaging in First-Amendment protected expression or for the content of his expression other than its suggestion of the plaintiff's gang affiliation). Rather, Mr. Sheppard's "allegations show only that the Defendants used the information from his social media posting as evidence to support the Security Risk Group designation." *Benway*, 2020 WL 4433561, at *6.

Accordingly, as Mr. Sheppard's Complaint has not raised an inference that he was retaliated against on the basis of his speech, his First Amendment retaliation claims will be dismissed.

### b. The Eighth Amendment Claim

Mr. Sheppard contends that Defendants Papoosha, Martin, Cook, and Santiago violated his right to be free from cruel and unusual punishment in violation of his rights under the Eighth Amendment. Am. Compl. ¶ 30, 32.

Mr. Sheppard notes in his Complaint that he is a "pretrial detainee in state prison." Am. Compl. at 1. Consequently, any claim related to Mr. Sheppard's exposure to unconstitutional conditions of confinement, including deliberate indifference to his safety, during the time that he was a pretrial detainee would arise under the Fourteenth and not the Eighth Amendment. *See Darnell v. Piniero*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims are evaluated under the Due Process Clause because[] pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." (internal citation, quotation marks, and alteration omitted)); *Barnes v. Harling*, C.A. No. 6:10-cv-06164 (EAW), 2019 WL 1319479, at *12 (W.D.N.Y. Mar. 19, 2019) ("Under current Second Circuit

12

law, when a pretrial detainee plaintiff brings § 1983 claims alleging deliberate indifference, including claims alleging failure to protect or intervene," a district court analyzes these claims under the Fourteenth Amendment using the standard set forth in *Darnell*. (citations omitted)).

Accordingly, Mr. Sheppard's Eighth Amendment claims will be dismissed.

### c.  The Fourteenth Amendment Claim

Mr. Sheppard asserts Fourteenth Amendment claims for denial of his rights to equal protection and due process, as well as a failure to protect claim and a claim he was denied redress of grievances.

The Court addresses each in turn.

### 1.  The Equal Protection Claim

The Fourteenth Amendment Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to prove a violation of the Equal Protection Clause, a plaintiff must demonstrate evidence of "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). Thus, to prevail on an equal protection claim, a plaintiff must allege that (1) he was treated differently from similarly situated individuals and (2) the difference in or discriminatory treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

Alternatively, a plaintiff may base an equal protection claim on allegations that he has been irrationally singled out as a "class of one." *Enquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). Under this theory, a class-of-one plaintiff must allege that "[he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To state a claim under the class of one theory, a plaintiff "must show 'an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s] [himself].'" *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

Mr. Sheppard alleges that Defendants violated his Fourteenth Amendment equal protection rights by denying him the ability to obtain evidence and have the assistance of an advocate or call witnesses, Am. Compl. ¶ 29, and to present a proper defense, rebut evidence, and access an impartial adjudicator, *id.* ¶ 30, as well as by failing to follow policy, *id.* ¶ 31, and by forcing Mr. Sheppard to house with an inmate designated as a rival affiliation, *id.* ¶ 32.

Because Mr. Sheppard has not alleged that he is a member of a protected class or that he was treated differently from similarly situated individuals due to a protected classification, he therefore fails to state a plausible traditional equal protection claim.

Upon initial review, the Court construes Mr. Sheppard to assert a "class of one" claim based on his allegations that Defendants denied him the ability to obtain evidence and have the assistance of an advocate or call witnesses, Am. Compl. ¶ 29, and to present a proper defense, rebut evidence, and access an impartial adjudicator, *id.* ¶ 30, as well as failed to follow policy, *id.* ¶ 31, and forced Mr. Sheppard to house with an inmate designated as a rival affiliation, *id.* ¶ 32.

Though Mr. Sheppard alleges facts showing that inmates with Security Risk Group classification are treated differently than those housed in general population, *see id.* ¶¶ 20, 22, Mr. Sheppard has not identified any sufficiently similar inmate who was treated differently such that he could plausibly allege a class-of-one claim. *See Nielson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (The plaintiff's circumstances and the other person's circumstances must be "prima facie identical.") (internal quotation marks and citation omitted), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008); *Webb v. Arnone*, C.A. No. 3:17-cv-01624 (SRU), 2018 WL 3651333, at *5 (D. Conn. Aug. 1, 2018) (concluding plaintiff "ha[d] not met the requirements necessary to state a plausible class-of-one equal protection claim" because he failed to assert any "facts to show that he was essentially identical to the other former death row inmates who are no longer subject to the out-of-cell restraint policy"). Mr. Sheppard therefore does not state a plausible class of one equal protection claim.

Accordingly, Mr. Sheppard's Fourteenth Amendment equal protection claims will be dismissed.

### 2. The Substantive Due Process Claim

"A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether . . . by deliberate indifference to conditions of confinement, or otherwise." *Darnell,* 849 F. 3d at 35 ; *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.").

"A pretrial detainee can establish a due process claim for inhumane conditions of confinement either by proving an official's deliberate indifference to those conditions, or by proving that those conditions are punitive," "theories of liability" which are "distinct." *Darnell*,

849 F.3d at 34 n.12.  Mr. Sheppard alleges facts supporting both theories.

When considering whether the conditions imposed on pretrial detainees violate substantive due process, the "court must decide whether the [condition] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell*, 441 U.S. at 538. If the plaintiff cannot demonstrate an "expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the condition] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.*

Therefore, "if a restriction or condition is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. On the other hand, if the condition "is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment." *Id.*  The Supreme Court has identified several legitimate government interests such as "ensuring the detainee's presence at trial," "maintain[ing] security and order" within the correctional facility, and ensuring that detainees do not have access to weapons or illicit drugs. *Id.* at 540.

Under the deliberate indifference standard, a pretrial detainee must satisfy both objective and subjective criteria. First, the pretrial detainee must satisfy the "'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." *Darnell*, 849 F.3d at 29. To establish an objective deprivation, "'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' . . . which includes the risk of serious damage to 'physical and mental soundness.'" *Id.* at 30 (citing *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)). "There is no 'static test' to determine whether a

16

deprivation is sufficiently serious; instead, 'the condition themselves must be evaluated in light of contemporary standards of decency.'" *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). The standards for evaluating objective deprivations depend on "severity and duration" and "not on the detainee's resulting injury." *Id.* In addition, the analysis should take place on a "case-by-case-basis," *id.*, and "the conditions must be analyzed in combination, not in isolation, at least where one alleged deprivation has a bearing on another, *id.* at 32 ("[a]n overcrowded cell, for example, may exacerbate the effect of unsanitary conditions").

Second, the pretrial detainee must satisfy the "subjective prong" by "showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.* at 29. "[T]o establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition" or that the prison official "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

Mr. Sheppard describes various conditions of his confinement and alleges that he would be subject to those conditions for a minimum of two years. Those conditions included confinement in his cell for twenty-three hours per day; showering in unsanitary and unsafe shower stalls; restricted visitation, phone, and commissary privileges; denial of tools needed to cook food; limited access to medical and medical health services; being forced to house with an inmate withrival affiliation under constant tension and threat of violence; and lack of exercise. Am. Compl. ¶ 22. The Court finds that Mr. Sheppard has plausibly alleged that these conditions deprived him of a basic human need or necessity or exposed him to a risk of harm or to his health

or safety. *See Helling v. McKinney*, 509 U.S. 25, 32 (1993) (basic human needs include food, clothing, shelter, medical care and reasonable safety); *Doyle v. Santiago*, No. 3:19-cv-901 (MPS), 2019 WL 5298147, at *8 (D. Conn. Oct. 18, 2019) (noting that "harsh" conditions only would not constitute an objective deprivation of the right to due process unless it "deprive[d] the plaintiff of a basic human need.")

Mr. Sheppard also must allege facts showing that "the defendant-official acted intentionally to impose the alleged condition" or that he "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Mr. Sheppard alleges that he was falsely accused of being an SRG member and was denied all opportunity to refute the charge and that he has complained to Defendants without result. Am. Compl. ¶¶ 15-22. As a result, he alleges that he has suffered mental and emotional distress with physical manifestations. *Id.* ¶ 23. For purposes of initial review, the Court finds these allegations sufficient to warrant discovery on whether Defendants acted intentionally or, at a minimum, recklessly failed to act with reasonable care to minimize the risk to which Mr. Sheppard was exposed.

Moreover, as noted above, substantive due process is violated if pretrial conditions are punitive. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In considering such a claim, the "court must decide whether the [condition] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. Absent evidence of an "expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned

to it.'" *Id.* (citation and alterations omitted). "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* at 539.

Conversely, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* Legitimate government objectives include "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach detainees," "ensuring that detainees' presence at trial," and managing the facility where the detainee is held. *Id.* at 540.

In *Almighty Supreme Born Allah v. Milling*, the Second Circuit considered the claim of a pretrial detainee who alleged his due process rights were violated when he was assigned to administrative segregation. 876 F.3d 48, 51-54 (2d Cir. 2017). The court concluded that "although plausibly related to security concerns in general, [plaintiff's conditions of confinement in the SRG Program] were so excessively harsh as to be punitive. [The plaintiff] was kept in solitary confinement for 23 hours a day for almost seven months . . . He received 'absolutely no programming or counselling or therapy' during that period." *Id.* at 58.

Mr. Sheppard alleges that he was designated a Security Risk Group member based on a social media post without affording him a chance to explain or rebut the post. Am. Compl. ¶¶ 13-17. He alleges that although he had previously been designated a Security Risk Group member, he renounced that membership years before and there was no other indication that he had rejoined the group and no particularized finding that he required such harsh conditions of confinement. *Id.* ¶¶ 15-17. Absent clear evidence that the conditions are related to legitimate governmental purposes and are not excessively harsh, the Court concludes that Mr. Sheppard has alleged a plausible due

process claim against Defendants and will permit Mr. Sheppard's substantive due process claim based on punitive conditions of confinement to proceed.

### 3.   The Procedural Due Process Claim

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The analysis of a procedural due process generally "proceeds in two steps: [w]e first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Supreme Court recognized that "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause." 515 U.S. at 483-84. "A plaintiff has a protected liberty interest only if the state created such an interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship." *Jusino v. Rinaldi*, No. 3:18-cv-2004 (MPS), 2019 WL 2720763, at *5 (citing *Tellier v. Fields*, 280 F.3d 69, 80-81 (2d Cir. 2000)).

When considering a procedural due process claim, the court evaluates only the procedures used by the hearing officer to reach her decision. *See Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (a procedural due process claim "permits only an evaluation of whether Defendants' method for coming to their [Security Risk Group] determination is sufficient."). "[T]he level of procedural protection differs according to the purpose of confinement." *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). Although "full adversary proceedings are not required for disciplinary

deprivations of liberty in the prison setting," requirements do include "written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence." *Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001) (applying the procedural due process standards required for convicted inmates to pretrial detainees (citing *Wolff v. McDonnell*, 418 U.S. 539, 561-70 (1974))). Administrative segregation is "appropriate when necessary to incapacitate an inmate who 'represents a security threat' or to 'complete an investigation into misconduct charges.'" *Proctor*, 846 F.3d at 609 (citing *Hewitt*, 459 U.S. at 476) (alterations omitted).

Mr. Sheppard alleges that Defendants Roberts, Randolph, and Eberle denied him procedural due process because he was not permitted to present witnesses or evidence in his defense and Defendant Eberle was not an impartial hearing officer. Am. Compl. ¶¶ 28-29. Mr. Sheppard alleges that he did not receive a disciplinary charge. The Court therefore assumes that the hearing was an administrative classification hearing.

At an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charges with deciding" the matter. *Wheeler-Whichard v. Roach*, 468 F. App'x 28, 30 (2d Cir. 2012) (citing *Hewitt*, 459 U.S. at 476). Mr. Sheppard alleges that he was not permitted to speak at the hearing or address the charges in any manner. Construing his allegations "to raise the strongest arguments that they suggest," *Sykes*, 723 F.3d at 403, Mr. Sheppard has plausibly alleged that he was denied the due process required under the law.

Accordingly, the Court will allow Mr. Sheppard's procedural due process claim to proceed against Defendants Roberts, Randolph, and Eberle.

### 4.  The Redress of Grievances Claim

Mr. Sheppard also alleges that Defendants Papoosha, Martin, and Santiago ignored or denied "numerous requests, letters, appeals and grievances." Am. Compl. ¶ 17.

"[I]nmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated these procedures do not give rise to a cognizable Section 1983 claim." *Alvarado v. Westchester Cty.*, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014) (citations, alterations, and quotation marks omitted). "Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly." *Schlosser v. Manuel*, No. 3:19-cv-1444 (SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020) (citing *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes … create federally protected due process entitlements to specific state-mandated procedures'")).

Therefore, "the grievance procedures, in and of themselves, do not create enforceable constitutional rights" for Mr. Sheppard. *See Walker v. Nicholas*, C.A. No. 20-cv-118 (VAB), 2020 WL 3430264, at *5 (D. Conn. June 23, 2020).

Accordingly, any claim Mr. Sheppard may assert against Defendants Papoosha, Martin, and Santiago for failing to respond to his letters or grievances will be dismissed.

### C.  State Law Claims

Mr. Sheppard sets forth state constitutional claims for violation of Article first, sections 4, 5, 8, 9, 14 and 20 of the Connecticut Constitution. Compl. ¶¶ 28-34.

The Connecticut Supreme Court has not recognized a private right of action for prisoners under section 8. *See Gothberg v. Town of Plainfield*, 148 F. Supp. 3d 168, 187-88 (D. Conn. 2015)

22

(declining to exercise supplemental jurisdiction over state constitutional claim under Article first, section 8); *see also Doe v. Mastoloni*, No. 3:14-cv-718 (CSH), 2016 WL 593439, at *17-18 (D. Conn. Feb. 12, 2016) (declining to exercise supplemental jurisdiction over state constitutional provisions, including Article first, section 8, where state courts have declined to recognize a private right of action).

While the Connecticut courts have recognized a private right of action for damages under Article first, section 9 of the Connecticut Constitution for illegal search and seizure of private homes by police officers, the Connecticut Supreme Court has explained that the decision to recognize a private right of action in that case "does not mean that a constitutional cause of action exists for every violation of our state constitution." *Binette v. Sabo*, 244 Conn. 23, 47, (1998). As the court explained, the decision to recognize any private causes of action would be made on a case-by-case basis after "a multifactor analysis." *Id.* at 48.  The Connecticut Supreme Court has also not extended the private right of action under Article first, section 9 to cases filed by prisoners. *See Silvera v. Connecticut Dep't of Corr.*, 726 F. Supp. 2d 183, 199-200 (D. Conn. 2010) (declining to exercise supplemental jurisdiction over claim under Article first, section 9 for forcing pretrial detainee to share cell with convicted inmate and providing inadequate mental health care as novel and undeveloped issue of state law).

With respect to the remaining state constitutional provisions cited by Mr. Sheppard—*i.e.*, Article first, sections 4, 5, 14, and 20—the Connecticut Supreme Court has not yet recognized a private right of action. The Court therefore declines to exercise supplemental jurisdiction over the state constitutional claims. *See, e.g., Lopez v. Smiley*, 375 F. Supp. 2d 19, 24-26 (D. Conn. 2005) (declining to recognize private right of action under various provisions of Connecticut Constitution, including Article first, sections 4, 5, 7, 8, 9, 10, 14, and deferring to state courts to

recognize such a cause of action in the first instance); *Torres v. Armstrong*, No. CV990427057S, 2001 WL 1178581, at *5-7 (Conn. Super. Ct. Sept. 6, 2001) (refusing to recognize prisoner's claim for money damages and injunctive relief brought under Article first, sections 1, 4, 8, 9, 14, and 20 of the Connecticut Constitution).

### D.  Injunctive Relief

Mr. Sheppard seeks release from the Security Risk Group unit, restoration of his rights and privileges, and expungement of the Security Risk Group designation. Am. Compl. at 10. As noted above, Mr. Sheppard has been released from custody.  When a prisoner is released from custody, claims for injunctive relief against prison officials become moot. *See Ciaprazi v. Jacobson*, 719 F. App'x 86, 87 (2d Cir. 2018) (summary order) (citing *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam)); *Khan v. Ruiz*, No. 3:19-cv-448 (VAB), 2020 WL 1234431, at *4 (D. Conn. Mar. 13, 2020). As Mr. Sheppard is no longer incarcerated, his claims for injunctive relief are dismissed as moot.

### E.  Motion for Appointment of Counsel

Mr. Sheppard seeks appointment of *pro bono* counsel in this action under 28 U.S.C. § 1915. *See* Mot. to Appoint Counsel.

The Second Circuit has cautioned the district courts against the routine appointment of counsel, given the limited volunteer attorney resources available. *See, e.g., Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 204 (2d Cir. 2003); *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997).  Before an appointment is even considered, the indigent person must demonstrate that he is unable to obtain counsel. *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986) ("[T]he language of the statute itself requires that the indigent be unable to obtain counsel before appointment will even be considered."). The Second Circuit also requires that movant satisfy "the

24

threshold requirement that the [case] have 'some likelihood of merit.'" *Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015) (quoting *Cooper v. A. Sergenti Co.*, 877 F.2d 170, 172-74 (2d Cir. 1989)).

As to the merit of Mr. Sheppard's claims, the record currently consists only of the Amended Complaint because no Defendant has yet been served and, accordingly, no responses as to Mr. Sheppard's allegations have been filed. Absent a response, the Court cannot assess the likely merit of Mr. Sheppard's claims. *See Smith*, 803 F.3d at 127 (counsel may be appointed where "the movant satisfies the threshold requirement that the appeal have some likelihood of merit") (internal quotation marks omitted).

As to whether Mr. Sheppard has demonstrated his ability to afford counsel, Mr. Sheppard notes in his motion that he is unable to afford counsel and that as an inmate, he had no access to a law library. Mot. to Appoint Counsel at 3. He also states that he has contacted three attorneys, including the Inmates' Legal Aid Program, the organization that provides legal assistance to Connecticut inmates. *Id.* at 4-5. Mr. Sheppard notes, however, that two of the three attorneys he contacted have not responded to his request for legal assistance made while he was incarcerated. *Id.* The record also does not make clear whether Mr. Sheppard has made any attempts to obtain legal assistance since his release. Absent such efforts, the Court cannot determine whether Mr. Sheppard can obtain legal assistance on his own.

Accordingly, Mr. Sheppard's motion for appointment of counsel will be denied without prejudice to renewal.

## IV.    CONCLUSION

The First and Eighth Amendment claims, the Fourteenth Amendment equal protection claim, and the request for injunctive relief are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The claim for damages against Defendants Papoosha, Santiago, and Cook in their official capacities is

**DISMISSED** under 28 U.S.C. § 1915A(b)(2).  The Court declines to exercise supplemental jurisdiction over Mr. Sheppard's state constitutional claims.

The case will proceed on the Fourteenth Amendment procedural and substantive process claims and the associated state law claims for negligence and intentional infliction of emotional distress against the Defendants in their individual capacities.

The Court enters the following additional orders.

(1)     **The Clerk shall** verify the current work address for each Defendant with the Department of Correction's Office of Legal Affairs, mail a waiver of service of process request packet containing the Amended Complaint and this Order to each defendant at the address provided by **November 6, 2020**, and report to the court on the status of the waiver requests **by December 11, 2020**.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendants in their individual capacities and the defendants shall be required to pay the cost of service in accordance with Federal Rule of Civil Procedure 4(d). Fed. R. Civ. P. 4(d).

(2)     **The Clerk shall** send Mr. Sheppard a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Amended Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the Complaint, either an Answer or motion to dismiss, **by January 15, 2021**.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **May 21, 2021**. Fed. R. Civ. P. 26–37.  Discovery requests need not be filed with the

26

court.

(6)     All motions for summary judgment shall be filed by **June 25, 2021**.

(7)     Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. D. Conn. L. Civ. R. 7(a)(2). If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If Mr. Sheppard changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he must notify the court. D. Conn. L. Civ. R. 83.1(c)(2). Failure to do so can result in the dismissal of the case.  Mr. Sheppard must give notice of a new address even if he is incarcerated.  Mr. Sheppard should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Mr. Sheppard has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Mr. Sheppard should also notify the defendants or the attorney for the defendants of his new address.

(9)     The parties must comply with the District of Connecticut's "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found using the following URL: http://ctd.uscourts.gov/administrative-standing-orders.

**SO ORDERED** this 16th day of October, 2020, at Bridgeport, Connecticut.

/s/Victor A. Bolden
Victor A. Bolden
United States District Judge