UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LAWRENCE SHEPPARD,
 *Plaintiff*,

v.

ROBERTS, ET AL.,
 *Defendants*.

No. 3:20-CV-895 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

 Lawrence Sheppard ("Plaintiff"), formerly incarcerated, filed a Complaint *pro se*, under 42 U.S.C. § 1983, challenging his classification as a Security Risk Group ("SRG") member and his confinement under harsh conditions in the SRG Program as a pretrial detainee. Mr. Sheppard has named Intelligence Officer Roberts, Lieutenant and Intelligence Officer Randolph, Lieutenant and Disciplinary Hearing Officer Eberle, Captain and SRG Coordinator Papoosha, District Administrator Martin, Director of Security Santiago, and Commissioner Cook as Defendants.[1] *See* Compl. ¶¶ 3–11, ECF No. 1 (June 24, 2020); Am. Compl. ¶¶ 3–11, ECF No. 11 (Aug. 13, 2020).

 Following an initial review order and a ruling on Defendants' motion to dismiss, *see* Initial Review Order, ECF No. 12 (Oct. 16, 2020), two federal claims remain: a procedural due process claim regarding the SRG hearing and a substantive due process claim regarding Mr. Sheppard's conditions of confinement in the SRG Program, *id.* at 2. Defendants did not address Mr. Sheppard's related state law claims for negligence and intentional infliction of emotional distress in their motion to dismiss, so those claims remain as well. *See id.*

---

[1] The Court uses Defendants' titles at the time of the incidents underlying this action, as described in the Complaint. Compl. ¶¶ 3–11; Am. Compl. ¶¶ 3–11.

Defendants now move for summary judgment on two grounds: (1) Mr. Sheppard failed to exhaust his administrative remedies on either federal claim; and (2) Mr. Sheppard cannot show that any defendant violated his constitutional rights. Defs.' Mot. for Summ. J., ECF No. 37 (Sept. 9, 2021) ("Mot. for Summ. J.").

For the following reasons, Defendants' motion is **GRANTED**.

I.     **BACKGROUND**[2]

From January 9, 2019 through June 30, 2020, Rollin Cook served as the Commissioner of the Department of Correction ("DOC"). Defs.' Local Rule 56(a)1 Statement ¶ 1, ECF No. 37-2 (Sept. 9, 2021) ("Local Rule 56(a)"). He had not been employed previously by the DOC. *Id*. Commissioner Cook is not familiar with Mr. Sheppard and has no recollection of ever receiving any written communication from him regarding his SRG status or any other matter. *Id.* ¶ 2.

Robert Martin is the warden at Corrigan-Radgowski Correctional Center ("CRCC") and has been employed as such since April 2019. *Id.* ¶ 3. He was previously warden at Bridgeport Correctional Center and Brooklyn Correctional Institution but has never been the warden at the Hartford Correctional Center ("HCC") or MacDougall-Walker Correctional Institution ("MWCI"). *Id.* Warden Martin has never been a District Administrator. *Id.* ¶ 4. As a warden, he has occasionally performed some duties of a district administrator in a temporary capacity when

---

[2] The facts are taken from Defendants' Local Rule 56(a) Statements and supporting exhibits. *See* Local Rule 56(a)1 Statement, ECF No. 37-2 (Sept. 9, 2021). Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. D. Conn. L. Civ. R. 56(a)1. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3. Although Defendants informed Mr. Sheppard of his obligation to respond to the motion for summary judgment and the contents of a proper response, *see* Notice to Self-Represented Litigant Concerning Mot. for Summ. J. as Required by Local R. of Civ. Pro 56(6), ECF No. 37-3 (Sept. 9, 2021), Mr. Sheppard has not filed a Local Rule 56(a)2 Statement or any opposition to Defendants' motion. Thus, Defendants' facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted . . . unless such fact is controverted by the Local Rule 56(a)2 Statement.").

a district administrator was absent, but he has only performed such duties in a temporary capacity and never for more than one week. *Id.*

Warden Martin has never been associated with the SRG Program other than serving as a warden at the facility that, until the recent closure of Northern Correctional Institution, housed inmates in phases 3-5 of the SRG Program. *Id.* ¶ 5. Warden Martin is familiar with Mr. Sheppard only to the extent that Mr. Sheppard was confined at CRCC in phases 3 through 5 from May 28, 2019 until Mr. Sheppard's discharge on July 24, 2020. *Id.* ¶ 6. Warden Martin has no recollection of ever receiving a written communication from Mr. Sheppard regarding his SRG status or any other matter, nor is there any record of communication with Mr. Sheppard in his office or the district administrator's office. *Id.* ¶ 7. Warden Martin also does not have any record of performing district administrator duties in a temporary capacity from July 26, 2018 through September 20, 2018. *Id.* ¶ 8.

Antonio Santiago has been the Director of Security since April 2018. *Id.* ¶ 9. The SRG Program is administrated by the Security Division, and the SRG Coordinator is Mr. Santiago's designee for any matters relating to the SRG Program. *Id.* ¶ 10. Accordingly, if he receives communication from an inmate regarding SRG status or the SRG Program, Mr. Santiago refers the matter to the SRG Coordinator for review and response. *Id.* ¶ 11. Mr. Santiago is unfamiliar with Mr. Sheppard and has no record of receiving any communication from Mr. Sheppard regarding his SRG status as a pretrial detainee or any other matter. *Id.* ¶ 12. Nor does his office have any record of communication from Mr. Sheppard. *Id.*

Daniel Papoosha is currently the SRG Coordinator and has occupied that position since April 2019. *Id.* ¶ 13. He has worked in the Security Division since January 2019. *Id.* Previously, he was a lieutenant at Manson Youth Institute and was not affiliated with the Security Division.

*Id.* ¶ 14.

In July 2018, Richard Roberts was employed as a phone monitor at HCC. *Id.* ¶ 15. As part of his duties, he monitored inmate phone calls and mail. *Id.* He also coordinated with the Security Division in investigating newly admitted inmates for gang involvement or affiliation. *Id.*

Mr. Sheppard was designated as a member of the SRG Bloods on September 8, 2006 and April 25, 2008. *Id.* ¶ 16. Both times, Mr. Sheppard admitted his affiliation. *Id.* Mr. Sheppard completed the SRG Program and renounced his affiliation in 2013, after which he was discharged from custody. *Id.* ¶ 17.

Mr. Sheppard entered DOC custody at HCC as a pretrial detainee on July 26, 2018. *Id.* ¶ 19. The same day, as part of his normal duties, Officer Roberts reviewed Mr. Sheppard's publicly available social media accounts for SRG activity or identifiers to ascertain whether Mr. Sheppard had an association with an SRG before his incarceration. *Id.* ¶ 20. Officer Roberts found account names, photographs, and captions showing an association with the SRG Bloods and the subgroup GShine. *Id.* ¶¶ 21–22. The posts suggested to Officer Roberts that Mr. Sheppard was currently loyal to and a member of an SRG and, therefore, posed a threat to institutional safety and security. *Id.* ¶ 23.

The following day, Officer Roberts informed Lieutenant Randolph, the supervising lieutenant of Mr. Sheppard's housing unit, of Mr. Sheppard's possible SRG affiliation. *Id.* ¶ 24. At that time, Lieutenant Randolph was a supervising lieutenant; he was not an "intelligence officer." *Id.* ¶ 25.

As a precautionary measure, Mr. Sheppard was placed in Administrative Detention pending resolution of the SRG affiliation investigation. *Id.* ¶ 26. Lieutenant Randolph supervised

Mr. Sheppard's transfer to restrictive housing and told Mr. Sheppard that the reason for his transfer would be explained later that day. *Id.* ¶¶ 27–28. The escort to restrictive housing lasted about five minutes, after which Lieutenant Randolph had no further interaction with Mr. Sheppard. *Id.* ¶¶ 29–30. Lieutenant Randolph was not involved in the subsequent investigation or hearing, and he made no statements to Mr. Sheppard regarding his possible SRG affiliation or any future hearing process. *Id.* ¶ 30.

That day, Officer Roberts spoke briefly with Mr. Sheppard at his cell. *Id.* ¶ 31. Officer Roberts asked Mr. Sheppard a few questions about his SRG affiliation but, based on the social media posts, concluded that Mr. Sheppard was not being truthful. *Id.* Officer Roberts told Mr. Sheppard that he would have a hearing to determine his SRG affiliation but did not describe or discuss the hearing. *Id.* Officer Roberts prepared an incident report documenting his findings, initiated a "long form" SRG designation hearing process, and reported his findings to the Security Division. *Id.* ¶ 32.

Inmates may be designated an SRG member in various ways. *Id.* ¶ 33. They may be issued a disciplinary report for SRG affiliation. *Id.* Alternatively, they may be designated as an SRG member through a long form SRG designation hearing, which is an administrative classification procedure without any disciplinary charges. *Id.* Inmates at a long form designation hearing are given notice of the hearing, as well as allowed witnesses if requested, an opportunity to testify, and an advisor if requested. *Id.* ¶ 34. If an inmate is designated an SRG member, he may appeal the designation through Administrative Directives 6.14 and 9.6. *Id.*

Officer Roberts completed and signed section 1 of the hearing form identifying the member activities. *Id.* ¶ 35. He did not complete sections 2 or 3, which record a request for witnesses and summarize the hearing. *Id.* ¶ 36.

When the Security Division approved the hearing, Officer Roberts sent his information to the hearing investigator and had no further involvement thereafter in the hearing process or the designation of Mr. Sheppard's program phase placement. *Id.* ¶ 37.

In July 2018, Officer Kenneth Emilia, who is not named as a defendant, was the disciplinary investigator at HCC. *Id.* ¶ 38. As part of his duties, he assisted with processing SRG affiliation hearing and related paperwork. *Id.* Specifically, Officer Emilia provided the inmate with a hearing notification form, CN 61401, which notified the inmate of the upcoming hearing, the SRG at issue, and the factors considered for possible SRG affiliation. *Id.* ¶ 39. Officer Emilia also determined whether the inmate wished to present witnesses or desired assistance of an advocate, and he recorded inmates' responses on the form. *Id.* ¶ 40.

On July 30, 2018, Officer Emilia gave Mr. Sheppard his notification form and signed it as staff witness. *Id.* ¶ 41. Mr. Sheppard indicated that he did not wish to call any witnesses and did not want an advocate. *Id.* ¶ 42. Officer Emilia gathered the evidence for the hearing officer and was present at the hearing. *Id.* ¶¶ 43–44.

The hearing was held on July 31, 2018. *Id.* ¶ 45. Lieutenant Eberle was the hearing officer. *Id.* ¶ 46.

At the beginning of the hearing, Lieutenant Eberle explained the procedure, offered Mr. Sheppard an opportunity to ask questions, and confirmed that Mr. Sheppard had not requested witnesses or an advocate. *Id.* ¶¶ 50–51. The evidence of Mr. Sheppard's SRG affiliation then was presented. *Id.* ¶ 52. Mr. Sheppard was offered the opportunity to address the evidence but declined to do so, stating he knew "we had him as a Blood and he was not giving us any information." *Id.* ¶ 53. At the conclusion of the hearing, Lieutenant Eberle determined, based on the evidence presented, that Mr. Sheppard should be designated as a Blood and completed the

hearing form, which Officer Emilia showed to Mr. Sheppard. *Id.* ¶¶ 54–56. Mr. Sheppard also received and signed form CN 61404, which confirmed his designation and informed him that he could file an appeal within fifteen days. *Id.* ¶ 57. Lieutenant Eberle had no further involvement with Mr. Sheppard, and she was not involved in the SRG Program phase placement decision. *Id.* ¶ 58.

Because this was Mr. Sheppard's third SRG designation, he was required to participate in the SRG Program for a mandatory period of two years. *Id.* ¶ 60. He was not required to serve the period in any particular phase of the program and could progress to less restrictive phases like other inmates. *Id.* ¶ 62. Mr. Sheppard was designated to phase 2 and transferred to MWCI. *Id.* ¶ 63.

Mr. Sheppard was sentenced on September 20, 2018. *Id.* ¶ 64. He had served about five weeks in the SRG Program as a pretrial detainee at the time. *Id.*

At HCC, MWCI, and CRCC, grievances and grievance appeals are deposited in clearly marked boxes accessible to all inmates at the facility. *Id.* ¶ 93. The grievances and grievance appeals are collected daily, from Monday through Friday, and properly filed grievances are entered into the facility grievance log. *Id.* ¶¶ 94–95. Appeals of SRG designation are filed the same way, logged, and then sent to the District Administrator's Office for review and response. *Id.* ¶ 95. A physical copy of the SRG appeal is retained in the facility where it was filed. *Id.* ¶ 96.

Mr. Sheppard was confined at HCC from July 26, 2018 until August 7, 2018, at MWCI from August 7, 2018 until May 28, 2019, and at CRCC from May 28, 2019 until his discharge on July 24, 2020. *Id.* ¶ 97. He filed no grievances or appeals after July 26, 2018 at HCC or MWCI. *Id.* ¶ 98. He filed one grievance, dated February 6, 2020 at CRCC. *Id.* ¶¶ 99–100.

In the grievance, Mr. Sheppard stated that he had written numerous letters and requests to

Defendants Papoosha, Martin, Santiago, and Cook but received no responses. *Id.* ¶ 101. Mr. Sheppard stated that he was designated an SRG member without a disciplinary charge or rule violation, based on social media posts. *Id.* He claimed he was not a gang member and asked to be removed from the SRG Program. *Id.*

On February 24, 2020, the grievance was rejected as not concerning a grievable matter because Mr. Sheppard had another remedy, namely an SRG appeal. *Id.* ¶ 102. The response noted that the SRG appeal had to be filed within fifteen days from notification of Mr. Sheppard's designation. *Id.*

Mr. Sheppard appealed the rejection. *Id.* ¶ 103. The appeal was rejected because it was received on March 23, 2020, well beyond fifteen days from the July 31, 2018, designation. *Id.* ¶ 105. There are no records of any other grievances or appeals filed by Mr. Sheppard since July 26, 2018. *Id.* ¶ 106.

## II. STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). Instead, a party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'").

### III. DISCUSSION

The remaining federal claims in this case are the alleged violations of Mr. Sheppard's Fourteenth Amendment procedural and substantive due process rights. Initial Review Order, ECF No. 12 (Oct. 16, 2020). Defendants move for summary judgment on two grounds: (1) Mr.

Sheppard failed to properly exhaust his administrative remedies before commencing this action; and (2) Mr. Sheppard cannot show that any defendant violated his constitutional rights. *See* Mot. for Summ. J.

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-CV-6606 (RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("The law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88

(2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The Supreme Court has held that the requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217–18 (citing *Woodford*, 548 U.S. at 93–95).

Exhaustion of administrative remedies must be completed "before [the inmate] fil[es] suit." *Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008) (summary order). Completing the exhaustion process after the complaint is filed does not satisfy the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122–23 (2d Cir. 2001) ("[A]llowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court.").

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are, in fact, not "available." *Ross v. Blake*, 578 U.S. 632, 642 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."). The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643–44. First, "an

administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the Court is guided by these illustrations. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) ("While not exhaustive," the three circumstances described in *Ross* "nonetheless guide the Court's [exhaustion] inquiry." (citation omitted)).

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendants bear the burden of proof. *See Jones*, 549 U.S. at 216. Once the defendants establish that administrative remedies were not exhausted before the inmate commenced the action, the plaintiff must establish that administrative remedy procedures were not available to him under *Ross*, or present evidence showing that he did exhaust his administrative remedies. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) ("[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability[.]").

The general inmate grievance procedure is set forth in Administrative Directive 9.6. *See* Ex. G to Defs.' Mot. for Summ. J., ECF No. 37 (Sept. 9, 2021) ("Dir. 9.6").

### A. Substantive Due Process

The procedure in DOC Administrative Directive 9.6 applies to Mr. Sheppard's Fourteenth Amendment substantive due process claim challenging his conditions of confinement. Dir. 9.6(1) ("The Department of Correction shall provide a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority.").

Under Administrative Directive 9.6, an inmate must first attempt to resolve the matter informally. Dir. 9.6(6)(A). He may attempt to verbally resolve the issue with an appropriate staff member or supervisor. *Id.* If attempts to resolve the matter verbally are not effective, the inmate must make a written attempt using a specified form and send the form to the appropriate staff member or supervisor. *Id.* If an inmate does not receive a response to the written request within fifteen business days, or the inmate is not satisfied with the response to his request, he may file a Level 1 grievance. Dir. 9.6(6)(C) & (I).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *Id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. Dir. 9.6(6)(I). The Unit Administrator may extend the response time by up to fifteen business days upon notice to the inmate on the prescribed form. Dir. 9.6(6)(J).

The inmate may appeal the disposition of the Level 1 grievance by the Unit Administrator, or the Unit Administrator's failure to dispose of the grievance in a timely manner, to Level 2. Dir. 9.6(6)(G), (I) & (K). The Level 2 appeal of a disposition of a Level 1 grievance

must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. Dir. 9.6(6)(K). An appeal of a Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate. Dir. 9.6(6)(M).

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, or Level 2 appeals to which there has been an untimely response by the District Administrator. Dir. 9.6(6)(L).

In his substantive due process claim, Mr. Sheppard contends that all Defendants subjected him to unconstitutional conditions of confinement as a pretrial detainee and describes harsh conditions, including confinement in his cell for twenty-three hours per day; showering in unsanitary and unsafe shower stalls; restricted visitation, phone, and commissary privileges; denial of tools needed to cook food; limited access to medical and medical health services; being forced to house with an inmate with rival affiliation under constant tension and threat of violence; and lack of exercise. Am. Compl. ¶ 22. Defendants have submitted evidence, however, that Mr. Sheppard filed no grievances regarding the conditions of confinement to which he was subjected as a pretrial detainee in the SRG Program. *See* Local Rule 56(a) ¶¶ 97–100; *see also* Ex. H to Defs.' Mot. for Summ. J. ¶ 8, ECF No. 37-12 (Sept. 9, 2021) ("Jeffrey Stickles Decl."); Ex. I to Defs.' Mot. for Summ. J. ¶ 8, ECF No. 37-13 (Sept. 9, 2021) ("Jessica Bennett Decl."); Ex. J to Defs.' Mot. for Summ. J. ¶¶ 7–17, ECF No. 37-14 (Sept. 9, 2021) ("Michelle King Decl."); Ex. K to Defs.' Mot. for Summ. J. ¶¶ 5–15, ECF No. 37-14 (Sept. 9, 2021) ("Victoria Soley Decl."). As Mr. Sheppard has presented no contrary evidence in opposition to the motion for summary judgment, the Court cannot determine that he has exhausted his administrative remedies or that such remedies were otherwise unavailable to him. *See Kelly*, 985 F. Supp. 2d at

284 ("[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability[.]").

Accordingly, the motion for summary judgment will be granted as to Mr. Sheppard's substantive due process claim for failure to exhaust administrative remedies.

### B. Procedural Due Process

Section 9 of Administrative Directive 9.6 provides that an SRG classification decision may be appealed by placing administrative remedy form CN 9602 in the designated box within fifteen days from the classification decision. Dir. 9.9(9). There is no further appeal. *Id.*

To exhaust his procedural due process claim, Mr. Sheppard had to file an SRG classification appeal within fifteen days from the date he was notified of the decision. *Id.* Mr. Sheppard signed the notification, which informed him of the time limit, on July 31, 2018. *See* Ex. A to Defs.' Mot. for Summ. J. at 5, ECF No. 37-5 (Sept. 9, 2021). Thus, he should have filed an appeal by August 15, 2018. He did not do so; instead, he filed a grievance in February 2020. *See* Jeffrey Stickles Decl. ¶ 8; Jessica Bennett Decl. ¶ 8; Michelle King Decl. ¶¶ 7–17; Victoria Soley Decl. ¶¶ 5–15. The grievance was rejected because he was on notice that he should have filed a classification appeal, not a grievance. Michelle King Decl. ¶¶ 7–17; Victoria Soley Decl. ¶¶ 5–15. Thus, Mr. Sheppard did not properly exhaust his remedies, both by filing the wrong document and by filing over a year too late.

In the grievance, Mr. Sheppard stated that he had submitted requests and letters with no response. *See* Michelle King Decl. ¶ 11; Victoria Soley Decl. ¶ 9; *see also* Ex D. to Defs.' Mot. for Summ. J. at 4, ECF No. 37-8 (Sept. 9, 2021) (inmate grievances). These informal attempts at

15

resolution, however, are insufficient to properly exhaust administrative remedies. *See Macias*, 495 F.3d at 44 (Inmates "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials); *see also Timmons*, 2015 WL 3901637, at *3 ("The law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

Accordingly, Defendants' motion for summary judgment will be granted on Mr. Sheppard's procedural due process claim as well.

### C. Remaining State Law Claims

As summary judgment has been granted on all of Mr. Sheppard's federal claims, the Court declines to exercise supplemental jurisdiction over Mr. Sheppard's state law claims for negligence and intentional infliction of emotional distress. *See* 28 U.S.C. § 1367(c)(3); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise supplemental jurisdiction over the remaining state-law claims."); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases). Mr. Sheppard may pursue those claims in state court.

## IV. CONCLUSION

Defendants' motion for summary judgment is **GRANTED**. The Clerk of Court respectfully is directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** this 15th day of April, 2022 at Bridgeport, Connecticut.

    /s/ Victor A. Bolden
    Victor A. Bolden
    United States District Judge